UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Thomas Goulas ,

       Plaintiff,

v.

Maxmo, Inc. And Maxmo Foroozan, an
individual,

       Defendants.

_____/

Case No. 14-10993

Honorable Nancy G. Edmunds

## ORDER GRANTING PLAINTIFF'S THIRD AMENDED MOTION FOR DEFAULT JUDGMENT [15]

Before the Court is Plaintiff Thomas Goulas's motion for default judgment against Defendants Maxmo, Inc., and Maxmo Foroozan for infringement of Plaintiff's "Honey Tree" restaurant trademark.   (Dkt. 15.)

Plaintiff has filed suit for trademark infringement pursuant to 15 U.S.C. § 1114 for infringing Plaintiff's "Honey Tree" restaurant trademark, for unfair competition pursuant to 15 U.S.C. § 1125(a), unjust enrichment, common law infringement claims, violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, breach of contract, breach of guaranty, and for injunctive relief.  (Compl.)

## I.    Facts

Plaintiff states that, since 1975, he has used and/or licensed the trade name and mark "Honey Tree" to over twenty three restaurants located in southeastern Michigan, Toledo, Ohio, and Las Vegas, Nevada.  (Comp. ¶ 8.)  Plaintiff states that he has used the Honey Tree name and mark consistently in connection with his restaurant operations and/or in

licensing the Honey Tree name and mark to authorized licensees or related companies. (*Id.* ¶ 9.)   Plaintiff maintains that the thirty-three year use of the name and mark in connection with Honey Tree's goods and services has resulted in the name and mark becoming widely and favorably known and therefore is a valuable asset to Plaintiff.  (Dkt. 10.)

Plaintiff is the principal register of the Honey Tree trademark with the United States Patent and Trademark Office and has also registered the name in Michigan.  (Exs. 1, 2.)

Plaintiff alleges that he has licensed the non-exclusive use of the Honey Tree name and mark to various restaurants in Michigan.  (Compl. ¶ 9.) Plaintiff states that, as a result of his "extensive and continuous use of the Honey Tree Name and Mark and quality of the of the Honey Tree's good and services over the course of 33 years, the Honey Tree Name and Mark have become widely known and favorably known and valuable assets to Plaintiff[.]" (*Id.* ¶ 10.)

Plaintiff states that, on August 25, 2013, he and Defendants executed an agreement for Defendants to use the Honey Tree trademark name. (Compl. ¶ 16.)  Under the licensing agreement, Defendants were to pay a $1,500.00 signing fee and $1,500.00 monthly royalty payments for the first six months.  (Compl., Ex. 3.)  After the first six months, the royalty rate was to increase to $2,000.00.  (*Id.*)

Shortly after that time, it appears that Defendants defaulted under the agreement by failing to pay amounts owing.

On December 20, 2013, Plaintiff sent Defendants a notice of default under the August 25, 2013 agreement.  (Compl. Ex. 4.)  Plaintiff informed Defendants that they owed him $7,500.00 under the terms of the agreement.  (*Id.*)  The notice stated that Defendants had

2

thirty days to cure the default or Plaintiff would "immediately file suit to cause [Defendants] to remove the Honey Tree name and trade marks from [Defendant's] premises and from [Defendant's] advertising.  (*Id.*)

Plaintiff states that Defendants failed to cure the default under the agreement. (Compl. ¶ 20.)

On January 29, 2014, Plaintiff sent Defendants a cease and desist letter for Defendants' usage of the Honey Tree name and mark.  (Compl., Ex. 5.)

Plaintiff states that he has terminated the agreement and that Defendants therefore do not have any right to use the Honey Tree name or mark.  (Compl ¶ 22.)

Plaintiff alleges that, despite terminating the agreement, Defendants are still using the Honey Tree name and mark to provide their services at their business operations (a restaurant) at 160 N. Milford Road, Milford, Michigan.  (Compl. ¶¶ 23, 24.)

Plaintiff further alleges that "Defendants' adoption and use of the [trademark] for its Milford location . . . is an intentional and obvious attempt to trade on the goodwill established by Plaintiff [] in the Honey Tree Name and Mark."  (Compl. ¶ 26.)

Plaintiff alleges that Defendants' unauthorized use of the trademark has "irreparably injured" him "by confusing consumers, diverting sales, and diluting the distinctiveness of the [trademark.]" (Compl. ¶ 29.)

Plaintiff claims that Defendants have also failed to pay monies owing under the agreement.  (Compl. ¶ 29.)  Plaintiff states that, if Defendants are permitted to continue, their usage of the trademark will injure Plaintiff, the trademark, and the reputation and goodwill associated with the trademark.  (*Id.*)  Plaintiff represents that Honey Tree has a "reputation for exceedingly high-quality food and services[.]" (*Id.*)  Plaintiff states that public

3

interest weighs in favor of the public being free from confusion, mistake, or deception from the improper trademark usage.  (*Id.*)  Plaintiff claims that Defendants' usage will likely "falsely suggest a sponsorship, connection, license, endorsement or association with Plaintiff, thereby injuring Plaintiff and the public."  (Compl. ¶ 30.)

Plaintiff states that Defendants still owe the restaurant licensing fees as well as the royalty rates from September, 2013, through February, 2014.  (Compl. Ex. 6.)

Plaintiff requests a litany of relief.  (Compl. at 10-11.)  Among the noteworthy requests outside of monetary damages, Plaintiff asks that the Court require Defendants "to deliver for impoundment during the pendency of this action, and for destruction upon entry of judgment, all products, menus, fixtures, writings, signage, artwork, and other materials that infringe Plaintiff's rights, falsely designate source or origin, or otherwise facilitate Defendants' unfair competition with Plaintiff[.] Plaintiff requests the Court to order Defendants to show compliance by filing a report in writing and under oath detailing "the manner and form in which Defendants have complied with [the Court's order.]" (*Id.*)  Plaintiff finally requests that the Court enjoin and restrain from: "using the Honey Name and Mark; otherwise infringing the Honey Tree Name and Mark, the Honey Tree Registrations and/or competing unfairly with Plaintiff[]."  (*Id.*)

Plaintiff requests legal fees of $10,165.10, which include the "costs to negotiate and draft the license agreement, the efforts to collect the licensing fee and royalties . . . and to prosecute th[e] action."[1]  (Pl.'s Mot. ¶ 30.)

---

[1]In his first motion for default judgment, Plaintiff's counsel represented that he was requesting $9,500.00 in legal fees, which included costs to negotiate and draft the license agreement, the efforts to collect the licensing fee and royalties, and to prosecute the action. (Dkt. 11.)

On April 4, 2014, Plaintiff requested clerk's entries of default against Defendants. (Dkt. 6.) That same day, the clerk's office entered those defaults. (Dkt. 7, 8.) On May 6, 2014, Plaintiff filed his original motion for default judgment. (Dkt. 11.) After a review of Plaintiff's materials, the Court concluded that Plaintiff had not complied with all of the requirements and produced all of the documentation necessary for a default judgment. So the Court ordered production of those materials on May 29, 2014. (Dkt. 14.) Plaintiff complied with the Court's order on the same day. (Dkt. 15.)

Plaintiff states that the agreement provides for attorneys' fees. (Pl.'s Mot. ¶ 29.) In his motion, Plaintiff requests $18,000.00 for license fees and royalties. (Pl.'s Mot. at 11.)

## II.   Default judgment standard

Once a plaintiff obtains a Rule 55(a) clerk's entry of default, a plaintiff may then seek a default judgment pursuant to Rule 55(b).[2] If the plaintiff seeks a judgment for a sum certain, he may requests a clerk's default judgment. Fed.R.Civ.P. 55(b)(1). For all other requests, a plaintiff must apply to a court under Rule 55(b)(2) for relief. To obtain a default judgment pursuant to Rule 55(b)(2), a plaintiff's motion and supporting affidavits must provide:

1. The nature of the claim;

---

[2] Once a default is entered, all the complaint's well-pleaded allegations are to be established as true. *See Rohn v. Commercial Recovery Systems, Inc.*, 13-10780, 2013 WL 6195578, at *3 (E.D.Mich. Nov. 26, 2013) (Murphy, J.) (quoting, "[w]hile a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (citations omitted).

2. That the return of service was filed with the Court and that service was properly made on the defendant;

3. A statement that the defendant is not:

    a) an infant or incompetent person; or

    b) in the military service;

    4. The date the Clerk entered a default because the defendant failed to plead or otherwise defend in accordance with Fed. R. Civ. P. 55(a);

5. The sum certain or the information necessary to allow the computation of a sum certain; and

6. If an award of interest, costs, or attorney fees is sought, the legal authority and supporting documentation for interest, costs or attorney fees.

*See* Fed. R. Civ. P. 55(b); E.D. Mich. L. R. 55.2. "After a court determines that a default judgment should be entered, it will determine the amount and character of the recovery awarded." *American Auto. Ass'n v. Dickerson*, ___ F.Supp.2d___, 2014 WL 234362, at*2 (E.D.Mich. Jan. 22, 2014) (Borman, J.) (citations omitted).

## III.  Analysis

### A.  Plaintiff's facts establish that Defendants have infringed upon the Honey Tree mark and name and are also unfairly competing with Plaintiff by using the Honey Tree name and mark

The Court undertakes the same analysis for the trademark infringement, unfair competition, common law trademark infringement, or a violation of the MCPA.  *Dickerson*, 2014 WL 234362, at *2 (citations omitted).  The Court "must evaluate the likelihood of confusion between the two marks."  *Id.* (citations omitted).

Accepting the well-pleaded facts as true, the Court finds that Defendants have violated Plaintiff's rights.  Here, Defendants are using Plaintiff's Honey Tree name and mark without the authorization to do so.  "By using these marks without permission, Defendants are

6

falsely representing that Plaintiff has endorsed or approves of their business." *Id.* at *3. "The use of [the Honey Tree name and mark] are likely to create confusion and mislead consumers into believing that Plaintiff endorses and recommends Defendants' business." *Id.* The Court further notes that Plaintiff alleges that Defendants' actions are wilful and deliberate given that Plaintiff notified them about their unlawful use of the Honey Tree name and mark.

### B. Monetary damages

Plaintiff is entitled to monetary damages.  Plaintiff claims that he is entitled to a $2,000.00 signing fee and the amount necessary to equal the royal rate for all the months that Defendants have failed to make the $1,500.00 monthly payment.  The Court first notes that the August 26, 2013 letter requests a signing fee of $1,500.00, so the Court will award that amount for a signing fee.  (Compl., Ex. 3.)  As for the monthly royalty rate amount, the Court awards the rate from September, 2013, to May, 2014, or eight months: six months at $1,500.00, and three months at $2,000.00, $15,000.00.  The total monetary award based on the agreement is therefore $16,500.00.[3]

### C. Injunctive relief

Plaintiff also requests injunctive relief.  Plaintiff requests that the Court:

1. order Defendants, their agents, servants, employees, attorneys, and any and all persons in active concert or participation with them immediately and permanently to cease and desist from all use of Plaintiff's marks or any mark

---

[3]Plaintiff claims he is entitled to $18,000.00 in monetary damages. He does not, though, describe how he calculated that number.

that resembles, suggests, or intimates that Defendants' business is approved or endorsed by Plaintiff;

2.   order Defendants to destroy all literature, menus, web sites, domain names, signs, billboards, labels, prints, packages, wrappers, containers, advertising materials, stationary, and other items in their possession or control that contain Plaintiff's marks or any term, symbol, or logo confusingly similar to Plaintiff's mark; and to destroy any and all means in their possession or control of making any of those infringing items;

3.   order Defendants to have deleted or removed from publication, sign, menu, and/or any advertisements paid for or used by them containing any of Plaintiff's marks and any other name, mark, or logo confusingly similar to them;

4.   order Defendants to permanently delete, destroy, and remove all electronic content, including all websites, domain names, and other electronic materials displaying Plaintiff's marks and any other name, mark, or logo confusingly similar to them; and

5.   order Defendants to file a report under oath within 30 days after the entry of an injunction setting forth in detail the manner in which Defendants have complied with the Court's injunction and orders.

The Lanham Act provides for permanent injunctions to prevent future violations of the Act. 15 U.S.C. § 1116. "A plaintiff who seeks a permanent injunction must demonstrate: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that considering the hardships between the plaintiff and defendant; a remedy in equity is

8

warranted; and (4) that it is in the public's interest to issue such an injunction." *Dickerson*, 2014 WL 234362, at *4 (citation omitted).  But, the Sixth Circuit has held "that no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Id.* (citation omitted).  Such a finding is not necessary because "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition." *Id.* (citation and quotation marks omitted).

Here, the Court finds that a permanent injunction is warranted.  Plaintiff has suffered an irreparable injury in that Defendants are infringing Plaintiff's Honey Tree mark and operating with that mark.  There is also no adequate remedy at law, since there is a potential for future harm from continuing infringement.  *Dickerson*, 2014 WL 234362, at *4 (citation omitted).  Plaintiff would also suffer hardship in that he faces the possibility of the loss of goodwill.  *Id.*  And finally, as the *Dickerson* court noted that preventing consumer confusion is in the public's interest.  *Id.*

Plaintiff is entitled to the injunctive relief he requests.

### D.  Attorneys' fees

Plaintiff asserts that the agreement entitled him to attorneys' fees.  He is correct.

The agreements includes an attorneys' fees provision.  (Agreement, ¶ 16.05.)  The provision states that Defendants are to pay a reasonable attorneys' fee, costs and expenses that Plaintiff incurs in successfully enforcing, or obtaining, any remedy arising from the breach of the agreement.  (*Id.*)

Plaintiff says that he has incurred legal fees of $10,165.10, an amount that includes the costs to negotiate and draft the license agreement, the efforts to collect the licensing

fee and royalties, and to prosecute this action.    (Pl.'s Mot., Ex. B, Pl.'s Aff. ¶ 24.)

The Court finds that some of fees Plaintiff requests are improper, given the fact that the agreement provides for an attorneys' fees award for enforcing the agreement and prosecuting any wrongs stemming from the agreement, but not entering into the agreement.  Plaintiff has not provided any authority for those fees that happened outside of enforcing the agreement.  The Court therefore removes 13.5 hours from the fee detail. The total hours expended with that 13.5 hours removed is 16.6 hours.  The Court will base its award on the 16.6 hours, finding those hours a little high, but within the range of being reasonable.  Plaintiff's counsel requests an hourly rate of $325.00.  Plaintiff's counsel has not supported that hourly request with any authority that that rate is reasonable.  The Court finds that it is not a reasonable rate.  Looking to the 2010 Economics of Law Practice Attorney Income and Billing Rate Summary Report, the Court finds that an hourly rate of $325 would put Plaintiff's counsel at nearly the ninety-fifth percentile.[4]  Given that Plaintiff's counsel has not provided the Court with any information regarding his background or experience, the Court will award the mean hourly billing rate for intellectual property/trade secrets attorneys, $268.00 per hour.  The attorneys' fees award would therefore be $ 4,448.80.  The Court awards the remaining costs and fees of $ 382.60.  The total fee award is therefore $4,831.40.

## IV.  Conclusion

For the above-stated reasons, the Court GRANTS Plaintiff's motion for default judgment.  The Court therefore immediately ORDERS:

---

[4]*Available at*, http://www.michbar.org/pmrc/articles/0000146.pdf (last visited June 2, 2014).

10

1. Defendants, their agents, servants, employees, attorneys, and any and all persons in active concert or participation with them immediately and permanently to cease and desist from all use of Plaintiff's marks or any mark that resembles, suggests, or intimates that Defendants' business is approved or endorsed by Plaintiff;

2. Defendants to destroy all literature, menus, web sites, domain names, signs, billboards, labels, prints, packages, wrappers, containers, advertising materials, stationary, and other items in their possession or control that contain Plaintiff's marks or any term, symbol, or logo confusingly similar to Plaintiff's mark; and to destroy any and all means in their possession or control of making any of those infringing items;

3. Defendants to have deleted or removed from publication, sign, menu, and/or any advertisements paid for or used by them containing any of Plaintiff's marks and any other name, mark, or logo confusingly similar to them;

4.  Defendants to permanently delete, destroy, and remove all electronic content, including all websites, domain names, and other electronic materials displaying Plaintiff's marks and any other name, mark, or logo confusingly similar to them;

5. Defendants to file a report under oath within 30 days after the entry of an injunction setting forth in detail the manner in which Defendants have complied with the Court's injunction and orders;

6.  Defendants to pay $16,500.00 in monetary damages; and

11

    7.  Defendants to pay $4,831.40 in attorneys' fees and costs.

So ordered.

                            s/Nancy G. Edmunds
                            Nancy G. Edmunds
                            United States District Judge

Dated:  June 4, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 4, 2014, by electronic and/or ordinary mail.

                            s/Carol J. Bethel
                            Case Manager